**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO**

| | |
|---|---|
| DAVIS & ASSOCIATES, P.C. n/k/a )<br>DAVIS SHILKEN, P.C., and KEITH L. )<br>DAVIS )<br>) Case No. 10-CV-03126-REB-CBS<br>Plaintiffs )<br>)<br>v. )<br>)<br>WESTCHESTER FIRE INSURANCE )<br>COMPANY and THE PLUS )<br>COMPANIES, INC. )<br>)<br>Defendants ) | |

**WESTCHESTER FIRE INSURANCE COMPANY'S AND THE PLUS COMPANIES, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants Westchester Fire Insurance Company and The Plus Companies, Inc. (jointly referred to as "Westchester") by and through their counsel, hereby submit this memorandum in support of their motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

**I.      INTRODUCTION**

This is an insurance coverage action. At issue is a Lawyers Professional Liability Insurance Policy that Westchester issued to Davis & Associates, P.C. Subject to all of its terms, conditions, exclusions and endorsements, the policy is a claims-made policy providing coverage for certain claims arising out of an act, error or omission that occurs prior to the policy period, but only if "at the inception of this policy [April 1, 2008] the Insured had no reasonable basis to believe that any Insured

had breached a professional duty and no reasonable basis to believe an act, error, omission or Personal Injury might be expected to result in such Claim or Suit."

On about June 29, 2009, Davis and Davis & Associates, P.C. (the "Insureds") were named as defendants in a legal malpractice action brought by their client and captioned *Ella Mae Bates v. Keith L. Davis and Davis & Associates, P.C.*, Case No. 09CV1433, filed in the District Court of Arapahoe County, Colorado (the "Bates Action"). The Insureds submitted the Bates Action under the policy as a Claim. As more fully set forth below, it is clear from the Bates complaint that all the alleged "acts, errors and/or omissions" at issue occurred prior to the policy's April 1, 2008 inception date. Accordingly, for the Insureds to meet their burden to "prove [the] claim arguably comes within coverage" (*Browning v. Am. Family Mut. Ins. Co.*, No. 09-1375, 2010 WL 3667116 at *4 (10th Cir. Sept. 22, 2010))[1], they must establish that as of April 1, 2008, the Insureds had "no reasonable basis to believe that any Insured had breached a professional duty" and no reasonable basis to believe that such breach might result in a Claim or Suit. Because it is clear from the underlying complaint that the Insureds cannot meet their burden, the Court should grant judgment in Westchester's favor and dismiss this action with prejudice.

## II.    STANDARD FOR JUDGMENT ON THE PLEADINGS

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are governed by the same standard of review as motions to dismiss under Rule 12(b)(6). *See Nau Holdings, LLC, v. Dlorah, Inc.*, Civil Action No. 08-cv-02743-CMA-BNB, 2010 WL 447393 at *2 (D. Colo. Feb. 3, 2010) (citing *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005)). The Court must assume the truth of all well-pleaded allegations of fact in the complaint,

---

[1] Copies of all unpublished cases cited herein are attached as Exhibit E.

but not its conclusions of law. *Bixler v. Foster,* 596 F.3d 751, 756 (10th Cir. 2010). The Court then must determine whether those well-pleaded allegations of fact are sufficient to support a claim against the defendant – that is, whether they include "enough facts to state a claim for relief that is plausible on its face." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (internal quotations omitted).

## III.     ALLEGATIONS IN THE UNDERLYING BATES ACTION COMPLAINT[2]

In 2004 Ella Mae Bates retained the Insureds for the purpose of creating a trust (the "Trust") that would enable her to qualify for long-term Medicaid benefits. Bates First Am. Compl. ¶ 6. According to the Bates Action complaint, by transferring the majority of her assets into the Trust for the benefit of her son, Ms. Bates would no longer have any available resources to be considered in connection with her Medicaid eligibility. *Id.*

After the Trust was created and funded, Ms. Bates applied to the Arapahoe County Department of Social Services ("ACDSS") for Medicaid. *Id.* ¶ 10. On March 15, 2007, ACDSS denied her Medicaid eligibility because it determined that the assets of the Trust, as drafted by the Insureds, were not exempt from consideration. *Id.* ¶ 12, Ex. 2 at 3. The Insureds were retained to appeal that determination, which they filed on March 29, 2007. *Id.* ¶ 13, Ex. 2 at 4.

On September 4, 2007, the ACDSS Office of Appeals entered a Final Agency Decision, which once again determined that, due to certain provisions of the Trust, Ms. Bates was not financially eligible for Medicaid benefits. *Id.* ¶ 14, Ex. 3 at 8. Specifically, the September 4, 2007 Final Agency Decision found that: "the Trust is a countable resource for purposes of determining

---

[2]   In evaluating a motion to dismiss, courts "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Young v. United Parcel Servs.*, No. 10-4156, 2011 WL 984734 at *1 (10th Cir. Mar. 22, 2011) (unpublished) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

eligibility for Medicaid long-term care benefits. As such, [Ms. Bates] is not eligible to receive Medicaid." *Id.*, Ex. 3 at 8.

The September 4, 2007 decision also stated:

> The Final Agency Decision shall be effective and binding upon all parties on the third [business day] after the date set forth in the certificate of mailing [September 4, 2007] . . . The Appellant may commence an action for judicial review of the Final Agency Decision, pursuant to the provisions of § 24-4-106(4), CRS. Any Judicial action must be filed with the appropriate State District Court within thirty (30) calendar days after this Final Agency Decision becomes effective.

*Id.*

After the September 4, 2007 Final Agency Decision was rendered, Ms. Bates's son and attorney-in-fact advised the Insureds that he wanted to appeal that Decision, and was assured by the Insureds "that an action would be filed in the district court seeking such review and that no deadlines would be missed." *Id.* ¶ 15. According to the Bates Action Complaint, however, "A complaint seeking judicial review of the Final Agency Action was not filed in a timely manner by [the Insureds]." *Id.* ¶ 16, Ex. 4 at 2.

Based on the foregoing, the Bates Action alleges that the Insureds breached their professional duties to her by: 1) failing to create the Trust in a way that would permit her to obtain Medicaid benefits; and 2) failing to adhere to the statutory limitation period for seeking judicial review of the Final Agency Decision as set forth in § 24-4-106(4), CRS. *Id.* ¶¶ 24, 25.

## IV. THE POLICY

On March 12, 2008, six months after the September 4, 2007 Final Agency Decision was rendered and five months after the time to commence a judicial review of that proceeding had expired, the Insureds applied to Westchester for coverage. Policy at 28, 31, attached hereto as Exhibit

4

A.[3]  Thereafter, Westchester issued to the Insureds Lawyers Professional Liability Insurance Policy No. LPL-G2390 5000 002 (the "Policy"), a claims-made and reported policy, for the policy period of April 1, 2008 to April 1, 2009.[4]  *Id.* at 1, 4.  The Insuring Agreement under which the claim was made provides:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages for Claims first made against the Insured during the Policy Period and first reported to the Company during the Policy Period or within thirty (30) days thereafter, arising out of any act, error, omission or Personal Injury in the rendering of or failure to render Professional Services by an Insured or any entity or individual for whom the Named Insured is legally liable; *provided always that such act, error, omission or Personal Injury happens*:
>
> A.  during the Policy Period; or
>
> B.  *prior to the Policy Period provided that:*
>
>     1.  such act, error, omission or Personal Injury happened on or after the Retroactive Date as indicated on the Declarations Page of this policy; and
>
>     2.  *at the inception of this policy the Insured had no reasonable basis to believe that any Insured had breached a professional duty and no reasonable basis to believe an act, error, omission or Personal Injury might be expected to result in such Claim or Suit.*

*Id.* at 4 (emphasis added).

---

[3] According to the terms of the Policy, the Application is deemed to be a part thereof.  Policy at 13, 27.
[4] Item 4 of the Policy's Declarations defines the Policy Period as: "Inception Date: 01-Apr-2008 Expiration Date: 01-Apr-2009." Policy at 1.

The Policy defines "Claim" as:

> [A] demand for money, [or] the filing of Suit… naming the Insured and alleging an act, error, omission or Personal Injury resulting from the rendering of or failure to render Professional Services.
>
> Claim also means knowledge by an Insured of any event or circumstance which could reasonably be expected to result in or lead to a Claim being asserted against an Insured, provided that the Insured gives the Company written notice of such event or circumstance prior to the termination date of the Policy Period or within (30) days thereafter, or during the Extended Reporting Period, if applicable.

*Id.* at 8.

## V.  THE INSTANT ACTION

The Insureds filed this coverage action against Westchester on or about November 17, 2010, after Westchester informed them that the Policy does not provide coverage for the Bates Action. Compl. ¶¶ 11, 16.  In an effort to establish coverage under the Policy's Insuring Agreement, the Insureds' Complaint states as a conclusion of law that "Davis and the Firm had no reasonable basis to believe that any claim existed prior to the April 1, 2008 inception date of the Policy." *Id.* ¶ 16.  This conclusion of law cannot be supported and the Complaint against Westchester should be dismissed.

## VI.  ARGUMENT

### A.  Westchester Is Entitled To Judgment On The Breach Of Contract Claim Because The Policy Does Not Provide Coverage For The Bates Action.

To prevail on their breach of contract claim, the Insureds must establish that a contract existed, that the Insureds performed or had some justification for nonperformance, and that Westchester failed to perform under the contract's terms.  *See Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  The Insureds have not, and cannot, make a *prima facie* case that Westchester failed to perform.  They cannot do so because the Bates Action does not trigger the

6

Policy's Insuring Agreement. Because the Insureds cannot meet their burden of proving the Bates Action comes within the Insuring Agreement, Westchester has no duty to defend or indemnify the Insureds for Loss they may have sustained in that action.[5] Thus, Westchester cannot be in breach of that contract.

Under Colorado law, the plain language of an insurance contract must be enforced as written. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 819-20 (Colo. 2004) ("[w]hen construing the terms of insurance policies, we apply principles of contract interpretation .... [t]hus, we seek to give the words in a policy their plain and ordinary meaning"). The unambiguous language of the Policy's Insuring Agreement, when considered in light of the express allegations of the underlying Bates Action complaint, establishes that there can be no coverage for the Bates Action as a matter of law. *See Rivelli v. Twin City Fire Ins. Co.*, No. 08-1480, 359 Fed. Appx. 1, 1, 2009 WL 3416663 (10th Cir. 2009) (unpublished).

Subject to its other terms and conditions, the Insuring Agreement of the Policy at issue in this case requires that "at the inception of this policy [April 1, 2008] the Insured had no reasonable basis to believe that any Insured had breached a professional duty and no reasonable basis to believe an act, error, omission or Personal Injury might be expected to result in such Claim or Suit." Policy at 4. It cannot be disputed that this Policy language is clear and unambiguous. *See Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808-10 (10th Cir. 2009) (holding that language providing coverage for "any actual or alleged act, omission, or Personal Injury arising out of Professional

---

[5] Though the Complaint includes allegations that Westchester breached a duty to indemnify the Insureds, and that the Insureds are thus entitled to damages, the Insureds would not be entitled to indemnification even if coverage existed for the Bates Action. On October 7, 2010, prior to the Insureds' November 23, 2010 filing of their complaint against Westchester, the Bates Court held that despite its finding that the Insureds committed malpractice, no damages could be awarded because Ms. Bates knew or should have known of the Insureds' breach before June 29, 2007, but had not timely filed the action in accordance with the relevant statute of limitations. *See* Bates Action Order at 4, 5, attached hereto as Exhibit B.

7

Services rendered by an Insured," provided that prior to the inception date, "the Insured did not know, or could not reasonable foresee that such Wrongful Act might reasonably be expected to be the basis of a Claim" was unambiguous.).

The majority of court decisions applying similar policy language examine first what the insured knew and then determine what a reasonable person with that information would believe. *See, e.g., Culver v. Cont'l Ins. Co.*, No. 98-1772, 11 Fed. Appx. 42, 46, 1999 WL 503527 at *3 (4th Cir. July 16, 1999) (unpublished) (interpreting exclusion with "reasonable basis to believe" language to invoke objective standard of foreseeability); *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 (3d Cir. 1998) (articulating test as whether reasonable lawyer, in possession of the facts the insured had, would have had a basis to believe the insured had breached a professional duty); *Weddington v. United Nat. Ins. Co.,* No. C 07-1733 SBA, 2008 WL 590512 at *4, 5 (N.D. Cal. Feb. 29, 2008) (unpublished) (applying the mixed subjective-objective test and noting the approach "has been the overwhelming trend within the majority of federal courts").

Similarly, the Tenth Circuit has applied a mixed subjective-objective test to such "prior knowledge" language. *See Rivelli*, 359 Fed. Appx. at *6-8. In *Rivelli*, in their application for a renewal policy, the insureds were required to warrant that "[n]o person or entity for whom this insurance is intended has any knowledge or information of any act, error, omission, fact or circumstance which may give rise to a claim…." *Id.* at *6. Subsequently, the SEC filed a complaint against the insureds which alleged that they had been fraudulently inflating reported company revenues for over a year before the warranty letter was signed. In considering the exclusionary language of the warranty, the *Rivelli* Court found that it "requires only that the insureds had knowledge or information that could give rise to a claim under their insurance policy." *Id.* at *7. In

8

arriving at this holding, the court rejected the insureds' argument that the insurer was required to show not only that the insureds knew of the facts related to acts that could give rise to a claim, but also that the insureds appreciated that those facts could give rise to a claim under the policy. *Id.* (holding that "the language [at issue] does not require that the [underlying plaintiff's] allegations show that [the insureds] appreciated that what they are alleged to have known could give rise to a claim."). Thus the *Rivelli* Court found that the insurer did not have to prove that the insureds knew their conduct exposed them to liability – because it "[did] not matter what the insureds believed, only what the [underlying complaint] alleged they knew." *Id.* Applying the test it had outlined, the *Rivelli* court affirmed the district court's holding that the warranty letter exclusion precluded coverage for the underlying action. *Id.* at *8.

Unlike *Rivelli*, the relevant language contained in the instant Policy is not part of an exclusion, but is part of the Policy's Insuring Agreement, and therefore the burden is on the Insureds to prove the claim triggers coverage. *See Browning*, 2010 WL 3667116 at *4. Moreover, the language in the instant policy goes even further than the language considered in *Rivelli* in requiring a subjective-objective test. This is because, unlike *Rivelli*, the instant Policy expressly provides coverage only in the event that the Insured has "no reasonable basis to believe" that an Insured breached a professional duty and "no reasonable basis to believe" that Claim or Suit might be brought. Policy at 4. Thus, to trigger coverage under the Insuring Agreement, the Insureds would have to show that, given what they knew as of April 1, 2008, reasonable persons would not believe they had breached a professional duty and a Claim or Suit might result. Based on the allegations of the Bates Action complaint, it is clear that this cannot be demonstrated as a matter of law.

9

The Bates Action complaint alleges that prior to the Policy's April 1, 2008 inception date, the Insureds were aware of the following facts:

1. In approximately February 2004, Ms. Bates retained the Insureds to draft an irrevocable trust for her assets, "thus leaving her with no available resources and, as a result, eligible for Medicaid." Bates First Am. Compl. ¶ 6.

2. On March 15, 2007, Ms. Bates's application for Medicaid was denied because the Insureds had failed to draft the Trust in a way that made her assets exempt from consideration. *Id.* ¶ 12, Ex. 2 at 3.

3. The Insureds' contemporaneous knowledge of the denial and the basis for it is clear from the fact that the Insureds filed Ms. Bates's appeal on March 29, 2007. *Id.* ¶ 13, Ex. 2 at 4.

4. On September 4, 2007, the ACDSS Office of Appeals issued a Final Agency Decision affirming the prior March 15, 2007 denial of Medicaid benefits to Ms. Bates because the Trust had not been properly drafted to shield the assets contained therein from consideration of Ms. Bates's Medicaid Application. *Id.* ¶ 14, Ex. 3 at 8.

5. The September 4, 2007 Final Agency Decision clearly states that it became "effective and binding upon all parties on the third [business day] after the date set forth in the certificate of mailing [September 4, 2007]" and any judicial review of the decision had to "be filed with the appropriate State District Court within thirty (30) calendar days after this Final Agency Decision becomes effective." *Id.* Ex. 3 at 8.

6. Subsequent to the Final Agency Decision, Ms. Bates's attorney-in-fact advised the Insureds he wanted to appeal that decision and was assured by the Insureds that they would timely do so. *Id.* ¶ 15.

7. The Insureds failed to timely seek judicial review of the Final Agency Decision since no complaint was filed with the States District Court prior to October 3, 2007. *Id.* ¶ 16, Ex. 4 at 2.

8. On January 17, 2008, the District Court for the City and County of Denver issued an Order dismissing Ms. Bates's Claim for Judicial Review because Ms Bates "failed to establish that she commenced

> th[e] action within the applicable time limits." Order at 3, attached hereto as Exhibit C.[6]

Based on the foregoing allegations of the Bates Action complaint, it is clear as a matter of law that the Insureds cannot credibly assert that as of the Policy's April 1, 2008 inception date, "the Insured had no reasonable basis to believe that any Insured had breached a professional duty and no reasonable basis to believe an act, error, omission or Personal Injury might be expected to result in such Claim or Suit." This is because 1) by March 15, 2007, the Insureds knew that ACDSS had determined that they failed to create the Bates Trust as their client had instructed, and 2) as of October 4, 2007, the Insureds knew that they failed to follow the client's instructions to timely seek judicial review of the Final Decision denying her Medicaid benefits. Clearly, based on the facts alleged in the Bates Action, reasonable minds would conclude that the Insureds breached a professional duty and that such breach might result in a Claim or Suit being brought against them.

For example, based on applicable case law a reasonable attorney has a basis to believe that his failure to draft a legal document in accordance with the client's clear instruction is a breach of duty. *See Hamilton v. Needham*, 519 A.2d 172, 175 (D.C. Cir. 1986) (attorney's drafting of a will such that it did not perform as intended by his client demonstrated an obvious lack of care and skill); *Olfe v. Gordon*, 286 N.W.2d 573, 578 (Wis. 1980) (negligence alleged regarding attorney's failure to effectuate client's intent in drafting documents so plain that no expert testimony required); *Bucquet v. Livingston*, 57 Cal.App.3d 914, 918 (Cal. Ct. App. 1976) (attorney negligent in drafting trust where it did not achieve the intended purpose).

---

[6] The January 17, 2008 Order is admissible based on *Pompa v. Am. Family Mut. Ins. Co*, 520 F.3d 1139, 1147-48 (10th Cir. 2008), in which an exception to the complaint rule permitted the court to take notice of the insured's conviction since it was "an indisputable fact that is not an element of either the cause of action or a defense in the underlying litigation (the wrongful-death case)."

In addition, the failure to timely file within an applicable limitations period has been held to constitute a clear breach of an attorney's professional duties. *See Bebo Constr. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo. 1999) (failing to file action by statutory deadline constituted breach of attorney's duty of care); *Giron v. Koktavy*, 124 P.3d 821, 825 (Colo. Ct. App. 2005) (negligence so plain where attorney fails to file within statutory period that no certificate of review is required despite statute requiring such certificates in every action based on professional negligence).

Given the Bates Action's allegations of extensive information the Insureds had regarding the failures in their representation of Ms. Bates prior to April 1, 2008, the Insureds cannot plausibly argue that they had no reasonable basis to believe there was potential for a professional liability claim by Ms. Bates. The Insureds' conclusory statement that they did not have a such a basis is belied by the facts. In any event, it does not matter what they actually believed. *See Rivelli*, 359 Fed. Appx. at *7. What matters is that from the facts alleged in the underlying Bates Action complaint, it is clear that the Insureds knew sufficient facts, before April 1, 2008, to have a reasonable basis to believe they had breached a professional duty and that a Claim could result.

Based on the foregoing, the Bates Action does not trigger the Insuring Agreement under the Policy, and the Insureds cannot establish that Westchester is required to defend or indemnify them in connection with that action. Westchester, therefore, respectfully requests that this Court grant it judgment on the Insureds' count for breach of contract.

### B. Westchester Is Entitled to Judgment On The Bad Faith Claims And The Claims For Statutory Remedies.

The complaint also purports to assert claims for common law bad faith and to seek statutory remedies under Colo. Rev. Stat. §§ 10-3-1115 and -1116 (the "Bad Faith Statute"). Westchester is entitled to judgment with respect to these claims.

#### 1. The Statutory Remedies Are Not Available In A Third-Party Coverage Claim.

The Bad Faith Statute cited by the Insureds states that an insurer "shall not unreasonably… deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). It allows a first-party claimant whose claim was unreasonably denied to "recover reasonable attorney fees and court costs and two times the covered benefit." *Id.* § 10-3-1116(1).

The statute defines a first-party claimant as an insured "asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." *Id.* § 10-3-1115(b). This does not include an insured seeking coverage under a liability policy, because a liability policy provides third-party coverage, not first-party coverage. *New Salida Ditch Co., Inc. v. United Fire & Cas. Ins. Co.,* No. 08-cv-00391-JLK, 2009 WL 5126498 at *5 (D. Colo. Dec. 18, 2009) (unpublished), *aff'd,* No. 10-1010, 2010 WL 4250004 at *1 (10th Cir. Oct. 28, 2010) (unpublished). *But see Stresscon Corp. v. Rocky Mountain Structures, Inc.,* Case No. 09CV3252, slip op. at 3 (Dist. Ct. Denver Apr. 22, 2010) (unpublished) A copy of which is included in Exhibit E.[7]

---

[7] We note that in *Rocky Mountain Structures*, a recent unreported decision, a Colorado trial court rejected the District Court's conclusion in *New Salida*, finding that an insured claiming under third-party coverage nonetheless meets the statutory definition of "first-party claimant" because it is seeking "a 'benefit owed directly to or on behalf of' an insured…." The analysis in *Rocky Mountain Structures* is flawed – indeed, it makes the very concept of limiting statutory liability to "first-party claimants" meaningless because according to *Rocky Mountain Structures* every insured claiming under any policy is always a "first-party claimant." In addition, it would be illogical for the Insureds to argue that they are

13

> **2.     Westchester Is Entitled To Judgment On The Common Law Bad Faith Claim And Statutory Claims Because Its Coverage Positions Were Reasonable.**

Even if the Insureds fit within the definition of first-party claimants, the Bad Faith Statute permits enhanced remedies only if the denial is unreasonable. A mere finding that coverage exists or that the insurer was mistaken is not sufficient. Colo. Rev. Stat. § 10-3-1115(1)(a); *see State Farm Mut. Auto. Ins. Co. v. Fisher,* No. 08-cv-01687, 2009 WL 2766763 at *7 (D. Colo. Aug. 27, 2009) (unpublished) (where the coverage issue was "fairly debatable" the insurer's denial of coverage could not constitute bad faith nor be "unreasonable" within the meaning of Colo. Rev. Stat. § 10-3-1115, therefore the insurer was entitled to summary judgment). Here, as demonstrated above, the Insureds cannot establish that Westchester's denial of coverage was in any way unreasonable.

The Insureds also allege a common law bad faith claim. Colorado law recognizes a tort action for common law bad faith in the denial of an insurance claim, though attorneys' fees are not recoverable. *Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 (Colo. 1996). But to establish common law bad faith the Insured must show that the Insurer acted unreasonably and that the Insurer either knowingly or recklessly disregarded the validity of the insured's claim. *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004). That is a more daunting standard than the one imposed by the Bad Faith Statute, so if the Insureds cannot meet the statutory standard – and they cannot – they also cannot meet the common law standard.

---

enforcing a duty to defend – which involves no payment of benefits to or on behalf of the insured, but only payments to outside counsel for the *insurer's* defense of the action – while at the same time arguing that the amounts owed for that defense should be treated as first-party coverage as if they were benefits due directly to the insured. Because the claims here involve third-party coverage under a liability policy, the statute does not apply.

14

Indeed, in the instant matter it seems particularly frivolous for the Insureds to argue that Westchester acted unreasonably in its declination of coverage. As set forth above, Westchester declined coverage of the Bates Action because the allegations of the complaint demonstrate that prior to April 1, 2008, the Insureds were aware of facts upon which reasonable people could conclude that the Insureds breached a professional duty and that a Claim or Suit might result. Not only is this position reasonable, but it is also consistent with the position taken by the Insureds in the underlying Bates Action, which position was ultimately adopted by the Bates Court.[8]

In the underlying Bates Action, a trial was held on whether or not the Insureds, in fact, breached their professional duties. Bates Action Order at 1. After that trial, the Insureds submitted to the court proposed findings of facts and conclusions of law. Proposed Findings, attached hereto as Exhibit D.[9] In that submission, the Insureds pressed their statute of limitations defense against Ms. Bates by arguing that she should have known of the Insureds' alleged malpractice

> when the Medicaid application [of Ms. Bates] was denied. The basis for the Medicaid denial was known by Mr. Bates [Ms. Bates's son who was her attorney-in-fact] in March of 2007 and he did not pursue any claims against the [Insureds] until June 29, 2009, three months after the statute of limitations had expired. Evidence that [Ms. Bates] knew or should have known about the Medicaid denial in March 2007 was abundant in trial and the fax letter Mr. Bates sent to [the Insured] Mr. Davis on March 25, 2007 indicating he wanted to appeal the Medicaid denial at the state level is further confirmation.

---

[8] Although Westchester's argument that it has no duty to defend the Bates Action is subject to the complaint rule – which states that an insurer's duty to defend is determined by examination of the policy and the complaint (*see Pompa*, 520 F.3d at 1145), the argument refuting the Insureds' bad faith claim is not.

[9] Courts may consider, on a motion to dismiss, documents filed by a party in another case. *See Gulf Coast Western Oil Co. v. Trapp*, 165 F.2d 343, 349 (10th Cir. 1947) ("In order to reach just results and bring an end to litigation, courts will use uncontroverted facts which are not formally of record in pending litigation, but which are ascertainable from an examination of facts and pleadings in former cases in the court between at least one of the parties and others relating to the same subject matter."); *see also Nagim v. Irving*, Civil Action No. 10-cv-01925-REB-KLM, 2010 WL 4810815 at *3 (D. Colo. Oct. 19, 2010) (unpublished) (court may take judicial notice of filings by plaintiff in other cases because they are a matter of public record).

*Id.* at 26, 27.

Based on the trial and the Insureds' filing, on October 7, 2010 – one month prior to the Insureds commencing this coverage action against Westchester for bad faith – the Bates Court rendered its Order. Bates Action Order at 5. In that Order, the Bates Court found that the Insureds committed "acts of malpractice" in connection with their drafting of the Trust, which acts "caused [Ms. Bates] damages." *Id.* at 3. However, the court went on to find that

> Colorado follows the "discovery rule," which states that a legal malpractice cause of action accrues when the client discovers, or through use of reasonable diligence should have discovered, the negligent conduct and damage. *Broker House Int'l, Ltd. v. Bendelow*, 952 P.2d 860 (Colo.App.1998). The focus is on a plaintiff's knowledge of facts that would put a reasonable person on notice of the general nature of the damage and that the damage was caused by the wrongful conduct of the attorney. *Morris v. Geer*, 720 P.2d 994 (Colo.App.1986)…. Therefore, this court finds that the statute of limitations prevents [Ms. Bates] from the award she would otherwise have recovered.

*Id.* at 5.

Because the Insureds, like Mr. Bates, were aware of the Medicaid denial and the reasons for it in March 2007, the Insureds should also be deemed to have discovered their legal malpractice at the same time. Thus, it cannot be unreasonable for Westchester to have concluded that based on that knowledge, and the subsequent knowledge that the Insureds had failed to timely file for judicial review of the Final Agency Decision rendered against Ms. Bates, coverage for the Bates Action did not exist. Thus, neither the remedies authorized by section 1116(a) nor damages for common law bad faith are available in this matter. *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. Ct. App. 2003) ("it is reasonable for an insurer to challenge claims that are fairly debatable.").

**VII.   CONCLUSION**

For the reasons stated above, Westchester is entitled to judgment as a matter of law on all of the Insureds' claims.

Dated:  April 12, 2011

                                                      Respectfully Submitted,

                                        By:   /s/ Kyle Seedorf
                                                 Kyle P. Seedorf
                                                 Taylor Anderson LLP
                                                 1331 Seventeenth Street, Suite 1050
                                                 Denver, Colorado 80202
                                                 Telephone:  (303) 551-6660
                                                 Facsimile:  (303) 551-6655
                                                 E-Mail:  kseedorf@talawfirm.com

                                                 Alan J. Joaquin
                                                 Michael Kopp
                                                 Drinker Biddle & Reath, LLP
                                                 1500 K Street, NW
                                                 Washington DC 20005
                                                 Telephone:  (202) 842-8800
                                                 Facsimile:  (202) 842-8465
                                                 E-Mail: alan.joaquin@dbr.com
                                                 E-Mail: michael.kopp@dbr.com

                                        *Counsel for Westchester Fire Insurance Company and*
                                        *The Plus Companies, Inc.*

## CERTIFICATE OF SERVICE

I certify that on April 12, 2011, a true and correct copy of the foregoing Westchester Fire Insurance Company's and the Plus Companies, Inc.'s Motion for Judgment on the Pleadings will be filed electronically via the CM/ECF system and a copy delivered via that system to counsel of record for the Insureds:

Jeremy A. Sitcoff
Alexa R. Salg
Roberts Levin Rosenberg PC
1660 Wynkoop, Suite 800
Denver, CO 80202
*Counsel for the Insureds*

/s/ Nicole K. Villa
Nicole K. Villa