**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-03126-REB-CBS

DAVIS & ASSOCIATES P.C. n/k/a
DAVIS SCHILKEN, P.C., and
KEITH L. DAVIS,

        Plaintiffs,

v.

WESTCHESTER FIRE INSURANCE COMPANY and
THE PLUS COMPANIES, INC.

        Defendants.

_____

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**
_____

Plaintiffs, Davis & Associates, P.C. n/k/a Davis Schilken, P.C. ("D&A") and Keith

L. Davis ("Mr. Davis") by and through their attorney, Jeremy A. Sitcoff of the law firm

ROBERTS LEVIN ROSENBERG PC, in accordance with REB Civ. Practice Standard V.I.4.,

respectfully submit the following Response to Defendants' Motion for Judgment on the

Pleadings (Doc. #27):

## I.      INTRODUCTION

This case is an insurance coverage dispute arising from Defendants Westchester

Fire Insurance Company ("WFIC") and The Plus Companies, Inc.'s ("Plus") failure and

refusal to provide Plaintiffs with a defense in a legal malpractice lawsuit styled *Ella Mae*

*Bates v. Keith L. Davis and Davis & Associates, P.C.*, Arapahoe County District Court,

Colorado, Case No. 09CV1433 (the "Bates Action").

At the outset, two key omissions in Defendants' Motion must be brought to the Court's attention: 1) Plaintiffs were continuously insured through successive professional liability policies issued by WFIC between April 1, 2007 and April 1, 2010;[1] and 2) Plaintiffs gave notice to WFIC of a potential claim involving Ms. Bates on March 29, 2009, which was during the policy period of the 2008-2009 WFIC Policy, and before any suit or claim was threatened or filed by Ms. Bates against Mr. Davis and/or D&A.

As Defendants are unable to meet their burden of establishing that no material issue of fact remains to be resolved, they are not entitled to a dismissal of Plaintiffs' claims in this lawsuit. Moreover, as Defendants have provided this Court with matters outside the pleadings, its Motion must be converted to a motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). Under this standard, there remain genuine issues of material fact regarding Plaintiffs' subjective and objective knowledge concerning a potential claim by Ms. Bates and the timing of such knowledge. As such, Defendants are not entitled to judgment as a matter of law on Plaintiffs' claim.

## II.     STATEMENT OF ADDITIONAL DISPUTED FACTS

1.      In early 2004, Les Bates ("Mr. Bates") contacted D&A regarding Medicaid planning for his elderly mother, Ella Mae Bates ("Ms. Bates"). **Exhibit 1**, at ¶ 3.

2.      In early 2004, Mr. Bates retained D&A's services to implement Medicaid planning for Ms. Bates, through a trust. **Exhibit 1**, at ¶ 4.

---

[1] Plaintiffs were insured by WFIC under a Lawyers Professional Liability Policy, Policy No. LPL-G2390 5000 001, for the policy period April 1, 2007 through April 1, 2008 (the "2007-2008 WFIC Policy"); a Lawyers Professional Liability Policy, Policy No. LPL-G2390 5000 002, for the policy period April 1, 2008 to April 1, 2009 (the "2008-2009 WFIC Policy"); and a Lawyers Professional Liability Policy, Policy No. LPL-G2390 5000 003, for the policy period April 1, 2009 to April 1, 2010. *See* Affidavit of Keith L. Davis, attached as **Exhibit 1**, at ¶ 31.

3.     In February 2004, Mr. Davis drafted an irrevocable trust (hereinafter the "Bates Trust") identifying Mr. Bates as co-trustee and sole beneficiary. **Exhibit 1**, at ¶ 5.

4.     Under the terms of the Bates Trust, Mr. Bates could terminate the other co-trustee with or without cause. **Exhibit 1**, at ¶ 6.

5.     On or about January 16, 2007, Mr. Bates as power of attorney agent applied for, on behalf of his mother, long term care Medicaid benefits. **Exhibit 1**, at ¶ 7.

6.     The Colorado Department of Healthcare Policy and Financing ("DHF") denied the Medicaid application in February, 2007 on grounds that a loan provision of the Bates Trust caused the assets of the Bates Trust to be considered a countable resource available to Ms. Bates thereby making her ineligible for benefits. **Exhibit 1**, at ¶ 8.

7.     In February 2007, Mr. Davis advised Mr. Bates to empty the Bates Trust's assets to render his mother eligible for Medicaid. **Exhibit 1**, at ¶ 9.

8.     Mr. Bates refused to empty the Bates Trust as instructed. **Exhibit 1**, at ¶ 10.

9.     Mr. Davis believes that Mr. Bates did so because he was angry with DHF and DHF's representatives. **Exhibit 1**, at ¶ 11.

10.     Plaintiffs then appealed the denial of Ms. Bates' Medicaid application on March 29, 2007 to the Office of Administrative Courts. **Exhibit 1**, at ¶ 12.

11.     Administrative Law Judge ("ALJ") Judith F. Schulman reversed the denial of Ms. Bates' Medicaid application on May 31, 2007, and issued an Initial Decision, finding that the assets of the Bates Trust were not to be considered a countable

resource available to Ms. Bates based upon the loan provision or otherwise.  **Exhibit 1**, at ¶ 13.

12.     DHF appealed ALJ Schulman's Initial Decision to the Office of Appeals. **Exhibit 1**, at ¶ 14.

13.     On September 7, 2007, the Office of Appeals issued a Final Agency Decision ("FAD") reversing the ALJ's Initial Decision.  The FAD provided that judicial review of its decision pursuant to Section 24-4-106(4), C.R.S. was required to be filed within thirty calendar days of the decision.  **Exhibit 1**, at ¶ 15.

14.     Based upon information Mr. Davis received, he believed that a Motion for Reconsideration of the FAD was permitted in an effort to exhaust all administrative remedies prior to requesting judicial review.  **Exhibit 1**, at ¶ 16.

15.     Mr. Davis believed that the Motion for Reconsideration tolled the 30-day statute of limitations for requesting judicial review of the FAD.  **Exhibit 1**, at ¶ 17.

16.     Accordingly, Mr. Davis filed a Motion for Reconsideration of the FAD on September 18, 2007.  **Exhibit 1**, at ¶ 18.

17.     Upon information and belief, the DHF accepted the Motion for Reconsideration and requested that the defendant-parties submit responses to same. **Exhibit 1**, at ¶ 19.

18.     The Motion for Reconsideration was denied on October 15, 2007.  **Exhibit 1**, at ¶ 20.

19.     Subsequent efforts to seek judicial review pursuant to Section 24-4-106 were denied because the deadline to seek such review expired on October 7, 2007. **Exhibit 1**, at ¶ 21.

20.     Throughout the administrative appellate process, Mr. Davis continued to advise Mr. Bates to "dump" or empty the assets of the Bates Trust, which would promptly qualify his mother for Medicaid benefits but Mr. Bates would not do so. **Exhibit 1**, at ¶ 22.

21.     Because Mr. Bates wanted to litigate against DHF, Mr. Davis referred Mr. Bates to attorney R. Eric Solem.  **Exhibit 1**, at ¶ 23.

22.     Mr. Bates retained Mr. Solem's services and on November 13, 2007, Mr. Bates filed an action in Denver County District Court, *Ella Mae Bates v. Joan Henneberry, et al.*, Case No. 07CV11002 (hereinafter "Judicial Review Action"), seeking judicial review of the FAD pursuant to Section 24-4-106 and asserting a civil rights violation claim pursuant to 42 U.S.C. § 1983.   Under his § 1983 claim, Mr. bates also sought to recover his attorney's fees as well as other damages.  **Exhibit 1**, at ¶ 24.

23.     During the pendency of the Judicial Review Action, Bates filed a petition in the Probate Court for the City and County of Denver styled *In the Matter of the Trust of Ella Mae Bates,* Case No. 07PR1616 (the "Probate Action").   On February 6, 2008, Judge Stewart issued an order in which she found that "the Settlor retained absolutely no rights to any payments or distributions from the Trust for her own benefit as was her intent, and therefore, any contributions she made to the Trust were an outright gift to Ms. Bates' son and his issue to which she retained no future right or interest." *See* Order Regarding Petition to Construe Trust, attached as **Exhibit 2**, at ¶ 9.

24.     Mr. Bates ultimately emptied the Trust's assets (exactly as Mr. Davis had previously instructed in February 2007) in May 2008.  **Exhibit 1**, at ¶ 25.

25.    Ms. Bates' Medicaid application was thereafter approved in July 2008, retroactive to May 2008.  **Exhibit 1**, at ¶ 26.

26.    On June 2, 2008, after a trial to the bench, Denver County District Court Judge Christina M. Habas dismissed Mr. Bates' Judicial Review Action in its entirety. **Exhibit 1**, at ¶ 27.

27.    Due to the dismissal of the Judicial Review Action, including Mr. Bates' request for judicial review of the FAD and his request for attorney's fees under 42 U.S.C. § 1983, it was not until June 2, 2008, that Plaintiffs could have possibly had any basis to believe that a claim for legal malpractice could result from its representation of Ms. Bates; however Plaintiffs did not believe that any claim could result because Les Bates could prevail at any time if he decided to empty the Bates Trust.  **Exhibit 1**, at ¶ 28.

28.    Plaintiffs did not become aware until March 2009 that Mr. Bates was dissatisfied with the services that had been provided and that he was considering pursuing a claim of legal malpractice against Mr. Davis and D&A.  Prior to that time, Mr. Davis had a cordial relationship with Mr. Bates through his representation of Ms. Bates. **Exhibit 1**, at ¶ 29.

29.    By letter dated March 29, 2009, Mr. Davis reported a potential claim resulting from his representation of Ms. Bates to WFIC, during the renewal process of D&A's professional liability insurance policy.  Affidavit of Jeremy Sitcoff, attached as **Exhibit 3**, at ¶ 2; *see also* **Exhibit 1**, at ¶ 30.

30.    On May 26, 2009, Plus, on behalf of WFIC, disclaimed coverage of the reported potential claim resulting from representation of Ms. Bates asserting Plaintiffs

were aware of circumstances as early as October, 2007 that could have led to a claim. Correspondence from B. Serafini to dated May 26, 2009. **Exhibit 3**, at ¶ 3.

31.     On November 23, 2010, Judge Antrim, the presiding judge in the Bates Action denied the plaintiff's Rule 59 Motion. Order attached as **Exhibit 4.** In her Order, Judge Antrim adopted paragraphs 8 through 14 of Mr. Davis and D&A's response to the Rule 59 Motion, which included the following:

> a.     Pursuant to Judge Stewart's findings in the Probate Action, the Bates Trust was properly drafted and Ms. Bates did not retain any rights to any payments or distributions from the Trust for her own benefit, and that any contributions Ms. Bates made to the Bates Trust were unconditional gifts to Mr. Bates and his issue, in which Ms. Bates retained no future right or interest; and,
>
> b.     That Les Bates and the independent Trustee could have dumped the Trust at any time and Ella Mae Bates would have qualified for Medicaid just as she did following the dumping of the Trust in May of 2008.

*See* Defendants' Response to Plaintiff's Motion to Amend Order Pursuant to C.R.C.P. 59, attached as **Exhibit 5,** at ¶¶ 8, 14.

32.     The 2008-2009 WFIC Policy is a claims made and reported policy. The policy provides, in pertinent part that:

### Section IV – POLICY PERIOD, TERRITORY

> The insurance by this policy applies to **Claims** which are first made against the **Insured** during the **Policy Period** and first reported to the Company during the **Policy Period** . . . .

*See* Exhibit A to Defendants' Motion, at 5.

33.     If the first time that Plaintiffs became aware of circumstances that could result in a claim from Ms. Bates was June 2008, the reporting of the claim on March 29, 2009, during the policy period of the 2008-2009 WFIC Policy was timely and the claim

would have been covered under the policy. Deposition of Barbara Serafini, attached as **Exhibit 6**, at 88:5-16.

### III. <u>STANDARD OF REVIEW</u>

A motion for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c) is reviewed under a similar standard as a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). "Judgment on the pleadings should not be granted 'unless the moving party clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *See Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). In ruling on a motion for judgment on the pleadings, the Court may consider the complaint, any material that is attached to the Complaint, and the answer. *Id.*

Where a party presents matters outside the pleadings to the court in support of or opposing a motion to dismiss, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997); *Wheeler v. Hurdman*, 825 F.2d 257 (10th Cir. 1987); *cf. Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991)(exhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss).

Defendants' Motion should be converted to a motion for summary judgment because Defendants have attached pleadings and papers in support of their Motion that were neither referenced in Plaintiffs' Complaint nor attached as exhibits to the

Complaint.[2]  As such, summary judgment is only proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing the absence of a genuine fact issue.  Further, all evidence must be viewed in the light most favorable to the party opposing the motion.  *See Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006).

## IV.    ARGUMENT

### A.    WFIC Is Not Entitled to Summary Judgment on Plaintiffs' Breach Of Contract Claim.

WFIC seeks to dismiss Plaintiffs' breach of contract claim on the sole basis that WFIC owed neither a duty to defend nor a duty to indemnify Plaintiffs in the Bates Action and, accordingly, WFIC cannot be in breach of contract.  WFIC asserts that there was no coverage for the Bates Action because prior to the inception of the 2008-2009 WFIC Policy, Plaintiffs had a reasonable basis to believe they had breached a professional duty but failed to notify WFIC.  Because there are genuine issues of material fact concerning whether Plaintiffs had a reasonable basis to believe that any act, error or omission might be expected to result in a claim, summary judgment is inappropriate.

Importantly, there has been no previous judicial determination concerning WFIC's obligations with respect to the Bates Action.  This is so because, instead of

---

[2] The following documents were neither referenced in nor attached to Plaintiffs' Complaint: Defendants' Exhibit B, an October 7, 2010 Order from the Bates Action; Defendants' Exhibit C, a January 17, 2008 Order from the Judicial Review Action; Defendants' Exhibit D, the Proposed Findings of Fact and Conclusions of Law from the Bates Action.

seeking a declaration of the parties' rights and duties under the applicable policies, or providing a defense under a reservation of rights, WFIC unequivocally rejected its defense obligations. At the outset then, WFIC's refusal to provide Plaintiffs a defense in the Bates Action should be examined critically considering that avoidance of this duty carried a heavy burden. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991) (insurer seeking to avoid its duty to defend an insured bears a heavy burden).

### 1. The Duty to Defend under Colorado Law.

In determining whether WFIC breached the insurance contract by failing to provide a defense, the following principles regarding the duty to defend govern. Liability insurance policies commit the insurer to two principal obligations: (1) to defend its insured against claims brought by third parties even if frivolous or groundless; and (2) to indemnify its insured for losses incurred as a result of judgments entered or settlement reached in those lawsuits. The "duty to defend is broader than the duty to indemnify . . . [and insurers may] be found to have a duty to defend even though ultimately it may be determined that they have no duty to indemnify." *Compass Ins. Co. v. Littleton,* 984 P.2d 606, 613 (Colo. 1999) (quotation omitted).

Whether an insurer has a duty to defend a particular claim presents a question of law, *Flannery v. Allstate Ins. Co.*, 49 F. Supp. 2d 1223, 1227 (D. Colo. 1999), to be determined principally by comparing the allegations in the complaint with the terms of the insurance contract. *See Hecla,* 811 P.2d at 1089; *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo. 2003). If the complaint alleges any facts that arguably raise any potential for coverage, the insurer has a duty to defend.

*Blackhawk-Central City Sanitation Dep't. v. Am. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000); *Hecla,* 811 P.2d at 1089; *see also Cyprus Amax*, 74 P.3d at 301 (holding that the "complaint rule" serves "to cast a broad net, such that when the underlying complaint alleges *any facts* or claims that might fall within the ambit of the policy, the insurer must tender a defense.") (emphasis in original).  Colorado has set a high standard for an insurance company seeking to avoid its duty to defend.  "[T]he insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot."  *Compass,* 984 P.2d at 614 (quoting *Standun, Inc. v. Fireman's Fund Ins. Co.,* 73 Cal. Rptr. 2d 116, 120 (Cal. Ct. App. 1998)).

### 2.      The Subjective-Objective Standard.

Although a number of courts have applied a purely objective standard to determine whether an insured had knowledge of an act, error or omission that could reasonably be expected to result in a claim,[3] more recently courts have applied a mixed standard utilizing a two-pronged, subjective-objective standard to determine whether an insured had prior knowledge of a fact or circumstance that could reasonably be expected to result in a claim prior to a policy's inception.  *See, e.g., Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 237 (3d Cir. 2006); *Coregis Ins. Co. v. Baratta & Fenerty, LTD*, 264 F.3d 302, 306-07 (3d Cir. 2001); *Brentwood v. Northland Ins. Co.*, 397 F. Supp. 2d 1143, 1147-48 (E.D. Mich. 2005); *American Special Risk Management Corp. v. Cahow,* 192 P.3d 614 (Kan. 2008);  *Executive Risk Indem. Inc., v. Pepper Hamilton LLP*, 56 A.D.3d 196, 202 (N.Y. Sup. Ct. 2008).

---

[3] *See Maynard v. Westport Ins. Corp.*, 208 F.Supp.2d 568, 576 (D. Md. 2002); *Nat'l Union Ins. Co. v. Holmes & Graven*, 23 F.Supp.2d 1057, 1066 n. 7 (D. Minn. 1998).

Under the subjective-objective standard, a court must first determine the subjective facts that the insured was aware of, and then must determine the objective question of whether a reasonable person would foresee that those facts might be the basis of a claim. *Westport Ins. Co. v. Lilley*, 292 F.Supp.2d 165, 171 (D. Me. 2003); *Westport Ins. Corp. v. Atchley, Rullel, Waldrop & Hlavinka*, LLP, 267 F.Supp.2d 601, 607-08 & nn. 4 &5 (E.D. Tex. 2003).

In *Westport Ins. Corp. v. Lilley*, the court interpreted language which precluded coverage if any insured at the effective date of the policy knew or could have reasonably foreseen that a prior act, error, omission or circumstance might be the basis of a claim. Applying a two-part subjective/objective test, the court held that this exclusion seeks to preclude insurance coverage in two general situations: "(1) when, before the policy period begins, the attorney has subjective knowledge that a claim will be made against him, and (2) when an attorney is engaged in willful blindness by ignoring the high probability that his actions will result in a claim being filed against him." 267 F.Supp.2d at 607-608. With regard to the subjective component, the court found that "[a]ll that matters is that the attorney subjectively knew, prior to the policy period, that his client intended to bring a claim." *Id.* at 608.

The objective element of this test applies where the court has determined what facts the insured subjectively knew, the second prong of the exclusion requires the court to make an objective assessment of those facts. *Id.* at 608-609. "The question becomes whether a reasonable attorney, in possession of the facts that the insured possessed at the time he applied for insurance, would reasonably foresee both that a professional breach had occurred and that the breach would likely be the basis of a claim against the

insured. If the objective calculus indicates that the attorney should have known that his conduct would result in a claim, the policy excludes coverage." *Id.* at 609, citing *Coregis Ins. Co. v. Goldstein*, 32 F.Supp.2d 508, 513 (D. Conn. 1998).

"The general rule was that a 'lawyer is not required to give notice under a malpractice policy until he has reason to believe he has injured a . . . client by his negligence.'" *General Insurance Company of America v. Rhoades*, 196 F.R.D. 620, 628 (D.N.M. 2000), quoting 8 John L. Appleman & Jean Appleman, Insurance Law and Practice § 4742, at 146-47 (1981). "An attorney who has no idea he or she has done anything wrong, and knows no facts indicating any performance has been substandard, is generally not expected to anticipate that a disappointed client will actually file a malpractice action." *Id.*

> **3.** **Disputed Questions of Fact Remain as to When Plaintiffs Had a Reasonable Basis to Believe an Act, Error, or Omission Might Be Expected to Result in a Claim.**

Applying the subjective-objective standard in this case, Plaintiffs did not have a reasonable basis to believe any act, error or omission on their part could result in a claim prior to April 1, 2008, as Defendants contend here.

The thrust of their contention is that Plaintiffs had a reasonable basis, subjectively and objectively, as of October 2007 to believe they had committed malpractice because they did not file a timely judicial review of the FAD. Defendants, however, ignore crucial, subjective and objective facts that demonstrate Plaintiffs did not possess such a reasonable basis.

First, it must be emphasized that the scope of Plaintiffs' legal representation of Ms. Bates concerned the drafting and execution of the Bates Trust such that Ms. Bates

would discharge her assets into a trust and qualify for Medicaid long term care benefits. **Exhibit 1,** at ¶ 4, 5, and 6.  Although Plaintiffs reasonably believed that the Bates Trust achieved this result, in February 2007, the DHF denied Ms. Bates' Medicaid application on grounds that assets in the Trust were to be considered a countable resource. **Exhibit 1,** at ¶ 8.  Thereafter, Mr. Davis endeavored on a two-part approach to secure Ms. Bates' Medicaid benefits.  First, he advised Mr. Bates to exit or "dump" the Bates Trust thereby qualifying Ms. Bates for benefits.  **Exhibit 1,** at ¶ 9.  Second, Mr. Davis commenced the administrative appellate process of the denial of Medicaid benefits. **Exhibit 1,** at ¶ 12.  Mr. Bates voluntarily chose not to empty the Bates Trust, and, instead pursued various courses of litigation against DHF.  **Exhibit 1,** at ¶¶ 10, 11, 23.

Mr. Davis continued to advise Mr. Bates to empty the Bates Trust while they successfully appealed the denial of Medicaid benefits to the Office of Administrative Courts.  **Exhibit 1,** at ¶ 22.  This recourse was still available to Mr. Bates in September 2007, when the Office of Appeals reversed the decision of the Office of Administrative Courts.  Based upon information that he had received, Mr. Davis requested leave to file a motion for reconsideration of the Office of Appeals' decision.  **Exhibit 1,** at ¶ 16.  Mr. Davis believed that the filing of the motion to reconsider tolled the ruling statute of limitations for judicial review of the FAD.  **Exhibit 1,** at ¶ 17.  In other words, at all times throughout the administrative appellate process, and thereafter, Mr. Bates had the option of dumping the assets of the Bates Trust which would thereby qualify Ms. Bates for Medicaid benefits.  Accordingly, Mr. Davis did not subjectively believe that any act, error or omission at that point in time would subject him or his law firm to a potential claim initiated by Ms. Bates.

Although the Office of Appeals ultimately determined that Plaintiffs had not timely requested judicial review of the FAD, this did not give them a subjective basis to foresee that a claim would result from such conduct. This is so because, again, Mr. Bates always had the ability and opportunity to dump the Bates Trust, which would have enabled Ms. Bates to qualify for Medicaid benefits. Moreover, in November 2007, Mr. Bates, on behalf of his mother, filed the Judicial Review Action, which included a claim for damages under 42 U.S.C. § 1983.

In May 2008, Mr. Bates finally decided to empty the Bates Trust and Ms. Bates qualified for Medicaid benefits that same month. **Exhibit 1,** at ¶ 25. Accordingly, contrary to Defendants' contention, prior to April 1, 2008, Plaintiffs did not have a reasonable basis to believe that any act, error or omission might be expected to result in a claim or suit. *See TIG Ins. Co.*, 767 N.E.2d at 602 (subjective-objective standard refers to insured's basis to foresee that claim would be made which refers to insured's knowledge). Notably, at no time prior to April 1, 2008, did Mr. Bates allege, in the Judicial Review Action or otherwise, that Plaintiffs had breached any professional duties. Second, from an objective standpoint, given other important facts, including Mr. Davis legal advice to Mr. Bates to dump the assets of the Bates Trust, the opportunity for Mr. Bates to do so at all times during the administrative appellate process and afterwards, and the sense that Mr. Bates that he was angry with DHF and that he was intent on filing separate litigation action seeking judicial review, a reasonable attorney would not foresee prior to the inception of the 2008-2009 WFIC Policy that a claim could result due to the failure to seek timely judicial review. *See Selko v. Home Ins. Co.*, 139 F.3d 146, 149 (3d Cir. 1998) (it must be determined that reasonable lawyer in

possession of such facts would have had basis to believe that insured had breached a professional duty).

A client's financial demise is not the same thing as notice that counsel will be sued for legal malpractice. *See General Insurance Co. of America,* 196 F.R.D. 620 (client alleged to have been fraudulently operated; court held that, absent knowledge by the attorney of deficient performance of the lawyer's own duties, he did not have knowledge of a basis for a claim so as to preclude coverage based upon a prior knowledge exclusion). If the rule were otherwise, any lawyer with a failing client would be at risk of losing professional liability insurance if he or she did not disclose a client's predicaments in insurance renewal applications. That is not, and should not be, the rule.

Common sense and sound policy dictate that a lawyer should only be at risk of no coverage because of a prior knowledge exclusion under one of three circumstances (none of which is present here):

1.  if the lawyer fails to disclose information regarding an already filed and pending claim;

2.  if the lawyer fails to disclose a communication from the client or a third-party expressing dissatisfaction or threatening suit; or

3.  if the lawyer knows or has reason to know he has breached a professional obligation and that it is reasonably likely that a malpractice claim will be asserted.

*See Westport Insurance*, 267 F. Supp. 2d at 610 (concluding that absent actual receipt of a claim or an inbound communication expressing dissatisfaction and threatening suit "actual breach of duty is a prerequisite to invoking the . . . exclusion.").

Such a rule makes sense. Professional liability insurance is purchased to protect lawyers from claims of malpractice arising out of a professional breach. Where a claim

is filed or threatened, the requirement for notice to insurers is clear. Where, as here, years go by after the termination of legal representation and no claim is filed or threatened, the lawyer is not on notice of any reason to believe that a malpractice claim will be asserted -- unless he is aware that he has committed a professional breach. "When an attorney has a basis to believe he has breached a professional duty, he has a reason to foresee that his conduct might be the basis of a professional liability claim against him." *Coregis Insurance Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 307 (3d Cir. 2001); *See General Ins. Co. of America*, 196 F.R.D. at 628 (rule that a lawyer " 'is not required to give notice under a malpractice policy until he has reason to believe he has injured a . . . client by his negligence' " is the "'only reasonable result'" because if the rule were otherwise "'insurers would be deluged with correspondence from their insureds.'") quoting 8 John L. Appleman & Jean Appleman, Insurance Law and Practice § 4742, at 146-49 (1981).

It was not until June 2, 2008, when Judge Habas dismissed the Judicial Review Action that Plaintiffs had a reasonable basis to believe that a claim for legal malpractice could result. This is so because in the Judicial Review Action, Mr. Bates had sought costs and attorneys' fees associated with his pursuit of the litigation against the DHF under his § 1983 claim. When Judge Habas dismissed the Judicial Review Action in June 2008, Mr. Davis believed for the first time that there existed the possibility that Ms. Bates could bring a claim. Thus, it is reasonable to assume that given Plaintiffs' knowledge of the dismissal of Mr. Bates' Section 1983 Action and appeal of that action, that a reasonable attorney in possession of such facts would have a basis to believe that a claim could result due to a breach of a professional duty.

Although Mr. Bates had never threatened a claim or litigation against Mr. Davis or D&A, and the Bates Trust, having been emptied and Ms. Bates having qualified for Medicaid benefits, out of an abundance of caution, Mr. Davis reported a potential claim to WFIC involving Ms. Bates on March 29, 2009, during the 2008-2009 WFIC Policy.[4] Defendants have acknowledged that assuming June 2, 2008 is the applicable date on which Plaintiffs first became aware of circumstances that could result in a claim, Plaintiffs' reporting of the claim on March 29, 2009 would have been timely and the claim would have been covered.  *See* **Exhibit 6**.

Based on the foregoing, there are genuine issues of material fact regarding the timing of Plaintiffs' subjective and objective bases to believe they had breached a professional duty.  Accordingly, Defendants are not entitled to judgment as a matter of law on Plaintiffs' breach of contract claim.

**B.    Summary Judgment Is not Warranted on Plaintiffs' Bad Faith Claims.**

Defendants also seek to dismiss Plaintiffs' statutory bad faith claims on grounds that Colorado Revised Statute Sections 10-3-1115 and −1116 only apply to first-party claimants and not, as Defendants allege, third-party claimants.  Defendants are mistaken.

Section 1115 states that a "person *engaged in the business of insurance* shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." §  10-3-1115(1)(a), C.R.S. 2010. (emphasis added). Importantly, the statute does not restrict the class of insurers to which it applies to first-party insurers.  Indeed, the statute expressly defines "first-party claimant," in pertinent

---

[4] The 2008-2009 WFIC Policy expired on April 1, 2009.

part, as "an individual, corporation, association, partnership or other legal entity asserting entitlement to benefits *owed directly to or on behalf of an insured* under an insurance policy." § 10-3-1115(1)(b)(I), C.R.S. 2010. (emphasis added). In defining the scope of plaintiffs entitled to a private right of action, the statute focuses on the relationship between the insured and the insurer – *i.e.,* whether the claimant has a direct claim to benefits under the insurance policy. Only those claimants with a direct right to the benefits of an insurance policy (which, under a liability policy, would include the rights to a defense and indemnification for a settlement or judgment) can bring a claim pursuant to the statute.

Notably, section 1115 excludes from the definition of first-party claimant "[a] person asserting a claim *against an insured under a liability policy.*" § 10-3-1115(1)(b)(II) (emphasis added). This exclusion, however, is inapplicable here because Plaintiffs are not asserting a claim against an insured under a liability policy. Rather, Plaintiffs are asserting claims against Defendants under the policies of insurance issued to them by the insurance companies. Furthermore, the same argument Defendants make here – that the statute provides remedies only for claimants under first-party insurance policies, not liability policies – was rejected by the court in *Stresscon Corp. v. Rocky Mountain Structures, Inc.*, Case No. 09CV3252, Denver District Court. *See* **Exhibit 7**; *see also* Order on Defendant United Fire & Casualty Company's Motion to Dismiss Fourth Claim for Relief Pursuant to C.R.C.P. 12(b)(5), attached as **Exhibit 8** (finding Judge Hoffman's ruling in *Stresscon* to be persuasive). Accordingly, Defendants are not entitled to a dismissal of Plaintiffs' statutory bad faith claim.

Defendants also contend Plaintiffs' bad faith claims are untenable because Defendants' coverage position was reasonable.[5]

Whether an insurer has breached its duty of good faith involves a determination of the insurer's reasonableness under the circumstances. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984). Reasonableness and good faith of a party's conduct are, of course, inherently fact-intensive issues and "are particularly unsuitable for summary judgment." *Woodward v. Bd. of Dirs. of Tamarron Condo. Owners, Inc.*, 155 P.3d 621, 625 (Colo. App. 2007) (holding that determination of reasonableness of conduct of homeowners' association was a fact issue that could not be determined on summary judgment). Accordingly, resolution on summary judgment in this case is certainly not appropriate.

## V.  CONCLUSION

For the reasons stated above, Plaintiffs respectfully request this Court deny Defendants' Motion for Judgment on the Pleadings in its entirety.

DATED this 6th day of May 2011.

---

[5] Defendants also appear to rely on the "fairly debatable" as a basis for the Court to dismiss Plaintiffs' bad faith claim. In November 2010, a division of the Colorado Court of Appeals rejected "fair debatbility" as a dispositive legal standard. *Sanderson v. American Family Mut. Ins. Co.*, 2010 WL 4492375, ___ P.3d ____ (09CA1263) (Colo. App. Nov. 10, 2010).

Respectfully submitted:

s/*Jeremy A. Sitcoff*
Jeremy A. Sitcoff
ROBERTS LEVIN ROSENBERG PC
1660 Wynkoop, Suite 800
Denver, CO 80202
Telephone: (303) 575-9390
Facsimile:  (303)575-9385
jas@robertslevin.com
**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of May 2011, I filed the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO WESTCHESTER FIRE INSURANCE COMPANY'S AND THE PLUS COMPANIES, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Kevin S. Taylor
ktaylor@talawfirm.com
Kyle P. Seedorf
kseedorf@talawfirm.com


Michael J. Kopp
michael.kopp@dbr.com
Alan J. Joaquin
alan.joaquin@dbr.com

*/s/ Lisa R. Thompson*
Lisa R. Thompson