**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No. 10-cv-03126-REB-CBS

DAVIS & ASSOCIATES, PC, n/k/a DAVIS SHILKEN, PC, and
KEITH L. DAVIS,

      Plaintiffs,

v.

WESTCHESTER FIRE INSURANCE COMPANY, and
THE PLUS COMPANIES, INC.,

      Defendants.

---

**ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

      This matter is before the court on the following motions for summary judgment:

(1) **Westchester Fire Insurance Company's and the Plus Companies, Inc.'s Motion for Judgment on the Pleadings** [#27][1] filed April 12, 2011; and (2) **Plaintiffs' Motion for Partial Summary Judgment and Memorandum Brief in Support** [#39] filed August 23, 2011.  Responses [#28, #40] and replies [#30, #42] addressing both motions were filed by the relevant parties.  Under FED. R. CIV. P. 12(d), I convert the motion of the defendants, Westchester Fire Insurance Co. and the Plus Companies, Inc., to a motion for summary judgment.  I grant the defendants' motion for summary judgment, and I deny the plaintiffs' motion for summary judgment.

---

[1] "[#27]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## I.  JURISDICTION

This court has jurisdiction over this case under 28 U.S.C. § 1332 (diversity).

## II.  STANDARD OF REVIEW

The defendants' motion includes exhibits that are not part of the complaint in this case.  Based on the defendants' use of those exhibits in support of their motion, the plaintiffs ask that the defendants' motion be converted to a motion for summary judgment.  The defendants argue that these exhibits may be considered in support of their motion for judgment on the pleadings.  The briefs concerning the plaintiffs' motion for partial summary judgment include some of the same exhibits.  At this point, all parties have had an opportunity to submit all of the exhibits and argument they consider germane to the issues presented in the two motions.  Thus, I conclude that it is appropriate to convert the defendants' motion for judgment on the pleadings [#27] to a motion for summary judgment as permitted by FED. R. CIV. P. 12(d).

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.[2]  FED. R. CIV. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505,

---

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers. *Cf.* FED. R. CIV. P. 56(c) and **(d)**. **Geear v. Boulder Cmty. Hosp.**, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

2510, 91 L.Ed.2d 202 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine issue of fact. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. *See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).

In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show by tendering depositions, affidavits, and other competent evidence that summary judgment is not proper. *Concrete Works*, 36 F.3d at 1518. All evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999).

### III.  FACTS

This insurance coverage dispute arises from lawyer's professional liability insurance policies purchased by the plaintiffs from the defendants. The plaintiffs are Davis & Associates, a law firm, and Keith L. Davis. I will refer to the plaintiffs collectively as the Davis Firm. A former client of the Davis Firm, Ella Mae Bates, filed a lawsuit against the Davis Firm alleging claims of professional negligence, breach of implied warranty, and negligent misrepresentation. *Response to motion for summary judgment* [#40], Exhibit 1-A (Bates Complaint). The defendant, Westchester Fire

Insurance Company (WFIC), refused to defend its insureds, the Davis Firm, in the Bates litigation.  Based on WFIC's refusal to defend the plaintiffs in the Bates litigation and to indemnify the plaintiffs against the claims asserted in the Bates litigation, the Davis Firm asserts three claims in its complaint [#1-3].  The Davis Firm asserts claims for breach of contract, bad faith breach of insurance contract, and violation of §§10-3-1115 and 10-3-1116, C.R.S.

## A. THE BATES LITIGATION

It is undisputed that on March 29, 2009, a few days before coverage under the 2008 - 2009 policy ended, the Davis Firm notified WFIC of a potential claim resulting from the plaintiffs' representation of Ella Mae Bates.  *Plaintiffs' motion for partial summary judgment* [#39], Exhibit 2-D.  Even though this claim was reported to WFIC during the coverage period of the 2008 - 2009 policy, the defendants argue that the plaintiffs are not entitled to coverage under that policy because on the inception date of the policy, April 1, 2008, the Davis Firm had a reasonable basis to believe that it had breached a professional duty owed to Ms. Bates and that this breach might be expected to result in a claim or suit.  The defendants argue that paragraph B.2. of the coverage provision quoted above excludes coverage of the Bates litigation from the policy.

In February, 2004, Ella Mae Bates retained the Davis Firm to create a trust (the Bates Trust) that would enable Ms. Bates to qualify for Medicaid benefits.  Ms. Bates sought to transfer the majority of her assets into the trust for the benefit of her son.  After the Bates Trust was created and funded and after Ms. Bates had depleted the remainder of her assets, Ms. Bates applied for Medicaid benefits with her local Department of Social Services (DSS). *Response to motion for summary judgment* [#40], Exhibit 1-A (Bates Complaint), ¶ 10.  On March 15, 2007, Ms. Bates' application for

Medicaid benefits was denied.  The DSS determined that the assets of the Bates Trust were not exempt from consideration because of the terms of a loan provision in the trust.  *Bates Complaint*, ¶ 12.

The plaintiffs were retained to appeal that determination, and they filed an appeal on March 29, 2007.  On May 31, 2007, an administrative law judge issued a decision reversing the determination of the DSS. *Bates Complaint*, ¶ 13.

The Colorado Department of Healthcare Policy and Financing filed written exceptions to the decision of the administrative law judge.  On September 4, 2007, the Office of Appeals of the Colorado Department of Healthcare Policy and Financing reversed the decision of the administrative law judge and entered a Final Agency Decision.  *Bates Complaint*, ¶ 14.  That decision held that, due to the terms of the loan provision in the Bates Trust, Ms. Bates was not financially eligible for Medicaid.  *Bates Complaint*, ¶ 14; *Response to motion for summary judgment* [#40], Exhibit 1-B (Final Agency Decision).

According to the Bates Complaint, after the Final Agency Decision was issued, Ms. Bates, through her son and attorney-in-fact, directed the Davis Firm to seek judicial review of the Final Agency Decision.  *Bates Complaint*, ¶ 15.  The Final Agency Decision includes a description of a party's right to file a motion for reconsideration of the decision and a statement that a party may seek judicial review of the Final Agency Decision by filing a judicial action in the "appropriate State District Court within thirty (30) calendar days after this Final Agency Decision becomes effective."  *Final Agency Decision*, p. 8.  The Davis Firm assured Bates that an action seeking judicial review would be filed and that no deadlines would be missed.  *Id.*

On September 28, 2007, the Davis Firm filed a motion for reconsideration with

the Office of Appeals of the Colorado Department of Healthcare Policy and Financing. The Davis Firm believed, albeit in error, that the filing of the motion for reconsideration tolled the 30 day statute of limitations applicable to the commencement of an action for judicial review of the Final Agency Decision. *Response to motion for judgment on the pleadings* [#28], Exhibit 1 (Davis Affidavit), ¶ 17. The motion for reconsideration was denied on October 15, 2007. The Davis Firm failed to file an action for judicial review before the 30 day statute of limitations expired. *Bates Complaint*, ¶ 16.

On November 13, 2007, Ms. Bates, represented by a different lawyer, filed a complaint in state district court seeking judicial review of the Final Agency Decision and asserting a claim under 42 U.S.C. § 1983 concerning the administrative hearing procedures that resulted in the Final Agency Decision. On January 17, 2008, the state district judge assigned to that case entered an order dismissing the claim for judicial review of the Final Agency Decision because the action for judicial review was not commenced "within the applicable time limits . . . ." *Motion for judgment on the pleadings* [#27], Exhibit C (***Bates v. Henneberry***, Case No. 07CV11002, District Court, City and County of Denver, Colorado (Order, filed January 17, 2008)).

On June 2, 2008, after a trial to the court, the same state district judge dismissed Ms. Bates' § 1983 claim in an oral ruling from the bench. On July 13, 2009, the state district judge entered a written order stating the basis for her June 2, 2008, ruling. *Response to motion for partial summary judgment* [#40], Exhibit 1-D (***Bates v. Henneberry***, Case No. 07CV11002, District Court, City and County of Denver, Colorado (Order, filed July 13, 2009.))

In March, 2009, the Davis Firm became aware that Ms. Bates was dissatisfied with the firm's services and that she was considering filing a claim of legal malpractice

against the firm.  In June, 2009, Ms. Bates filed a complaint in state court alleging, *inter alia*, a claim of professional negligence against the Davis Firm.  *Response to motion for summary judgment* [#40], Exhibit 1-A (Bates Complaint).  The defendants refused the plaintiffs' demands that the defendants provide a defense for the plaintiffs and that the defendants indemnify the plaintiffs against the claims asserted in the Bates litigation.

### B.  POLICIES AND POLICY TERMS

In its complaint [#1-3], the Davis Firm alleges that it was covered by a professional liability policy issued by WFIC for the policy period April 1, 2008, to April 1, 2009.  *Complaint*, ¶ 8.  It is undisputed that the Davis Firm was insured continually under successive WFIC lawyer's professional liability policies from April, 2007, through April 1, 2010.  *Id.*, ¶¶ 9 - 10.  In the **Final Pretrial Order** [#48], the plaintiffs state that they were covered under professional liability policies issued by WFIC since April 1, 2007.  *Final Pretrial Order*, p. 2

Each of the WFIC policies is a claims made and reported policy. The policy that covered the period from April 1, 2008, to April 2, 2009 provides:

### SECTION I - COVERAGE

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages for Claims first made against the Insured during the Policy Period and first reported to the Company during the Policy Period or within thirty (30) days thereafter, arising out of any act, error, omission or Personal Injury in the rendering of or failure to render Professional Services by an Insured or any entity or individual for whom the Named Insured is legally liable; provided always that such act, error, omission or Personal Injury happens:

A. during the Policy Period; or

B. prior to the Policy Period provided that:

    1. such act, error, omission or Personal Injury happened on or after the Retroactive Date as indicated on the Declarations Page of this

policy;

and

2. at the inception of this policy the Insured had no reasonable basis to believe that any Insured had breached a professional duty and no reasonable basis to believe an act, error, omission or Personal Injury might be expected to result in such Claim or Suit.

*Response to motion for summary judgment* [#40], Exhibit 1-H (2008 - 2009 Policy), p. 3

of 12.  The 2008 - 2009 Policy defines a "Claim" as:

SECTION VIII - DEFINITIONS

[A] demand for money, [or] the filing of Suit… naming the Insured and alleging an act, error, omission or Personal Injury resulting from the rendering of or failure to render Professional Services. Claim also means knowledge by an Insured of any event or circumstance which could reasonably be expected to result in or lead to a Claim being asserted against an Insured, provided that the Insured gives the Company written notice of such event or circumstance prior to the termination date of the Policy Period or within (30) days thereafter, or during the Extended Reporting Period, if applicable.

*2008 - 2009 Policy*, p. 7 of 12.

## IV.  ANALYSIS

A.  STANDARDS FOR CONSTRUCTION OF THE INSURANCE POLICIES

This case hinges on an interpretation of the WFIC policy.  In this diversity action,

Colorado law provides the legal principles by which the Policy must be interpreted.

***Leprino Foods Co. v. Factory Mut. Ins. Co.***, 453 F.3d 1281, 1287 (10th Cir. 2006).

Interpretation of an insurance contract is a question of law to be resolved by the court.

***Colorado Intergovernmental Risk Sharing Agency v. Northfield Insurance Co.***, 207

P.3d 839, 841 (Colo. App. 2008).

Under Colorado law insurance contracts are to be construed in accordance with

the general laws of contracts. ***Federal Deposit Ins. Corp. v. American Casualty Co.***,

843 P.2d 1285, 1289 (Colo. 1992); *Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 288 -

289 (Colo. 1981), *overruled on otr. grounds*, *Friedland v. Travelers Indem. Co.*, 105

P.3d 639, 642-643 (Colo. 2005).  Traditional rules of construction apply. Thus, not

surprisingly, an insurance contract must be interpreted according to the plain and

ordinary meaning of its language. *Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 829

(10th Cir. 2008); *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.

1990).  When the language used in a contract is plain and its meaning is clear, the

agreement must be enforced as written.  *In re May,* 756 P.2d 362, 368 (Colo. 1998);

*Fire Ins. Exch. v. Rael by Rael*, 895 P.2d 1139, 1142 (Colo. App. 1995).  Courts

should be wary of rewriting contract provisions and should give the words contained in

the contract their plain and ordinary meaning, unless contrary intent is evidenced within

the contract itself. *See, e.g., Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893,

902 (10th Cir. 2006) (noting that courts should not rewrite insurance policy provisions

that are clear and unambiguous) (citations omitted); *Cyprus Amax Materials Co. v.

Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) (courts should give the words

contained in an insurance policy their plain and ordinary meaning).

Courts may neither add provisions to extend coverage beyond that contracted

nor delete provisions to limit coverage.  *Cyprus Amax*, 74 P.3d at 299.  When

interpreting a policy's provisions, a court's construction "must be fair, natural, and

reasonable rather than strained and strictly technical." *Massingill v. State Farm Mut.

Auto. Ins. Co.*, 176 P.3d 816, 825 (Colo. App. 2007) (*citing Pub. Serv. Co. v. Wallis &

Cos.*, 986 P.2d 924, 939 (Colo. 1999)).  A court's interpretation of an insurance contract

is a matter of law, subject to de novo review. *Compass Ins. Co. v. City of Littleton* ,

984 P.2d 606, 613 (Colo. 1999).

When an insurance company seeks to limit or exclude coverage under the terms of an insurance policy, the insurer bears the burden or proving that a particular loss falls within an exclusion in the contract. ***Colorado Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.***, 207 P.3d 839, 842 (Colo. App. 2008).  If a limitation or exclusion in an insurance contract  is unambiguous, then that limitation or exclusion must be enforced. ***Id***.

B.  WHICH POLICY IS APPLICABLE?

In the briefing related to the plaintiffs' motion for partial summary judgment, the parties dispute which of the three WFIC policies issued to the Davis Firm is applicable in this case.  This issue can and must be resolved by interpreting the language of the policies.   I find and conclude that the 2008 - 2009 Policy is the policy that must be construed to determine whether or not a WFIC policy includes coverage of the Bates claim against the Davis Firm.

The professional liability insurance policies in question are claims made and reported policies. The first policy covered the period from April 1, 2007, to April 1, 2008. *Response to motion for summary judgment* [#40], Exhibit 1-I (2007 - 2008 Policy), CM/ECF p. 1 (Declarations Page).  The second policy covered the period from April 1, 2008, to April 1, 2009. *2008 - 2009 Policy*, CM/ECF p. 1 (Declarations Page).  Like the 2008 - 2009 policy, the 2007 - 2008 Policy covers claims "first made against the Insured during the Policy Period and first reported to the Company during the Policy Period or within thirty (30) days thereafter . . . ." *2007 - 2008 Policy*, p. 3 of 12.

 It is undisputed that the Bates claim against the plaintiffs was reported first to WFIC on March 29, 2009.  Therefore, coverage under the 2008 - 2009 Policy, which

10

was effective from April 1, 2008, to April 1, 2009, is at issue here.  The Bates claim was not first reported to WFIC during the coverage period of the 2007 - 2008 Policy. Therefore, the 2007 - 2008 Policy does not provide coverage for the Bates claim.

The Davis Firm argues that the 2008 - 2009 Policy was a renewal of the 2007 - 2008 Policy and that, therefore, the 2007 - 2008 Policy should be seen also as providing coverage for the Bates claim.  In essence, the Davis Firm argues that the window of coverage provided by each policy should expand as long as each annual policy is renewed continuously.  However, this theory is contrary to the clear language of the policies, which language provides that each policy covers claims first made against the insured and reported to the insurance company during the policy period or within 30 days thereafter.  *2007 - 2008* Policy, p. 3 of 12; *2008 - 2009 Policy*, p. 3 of 12.

The language of the policies is plain and its meaning is clear.  Thus. the policies must be enforced as written.  The 2008 - 2009 Policy is the policy that must be analyzed to determine whether a WFIC policy includes coverage of the Bates claim.

## C.  DUTY TO DEFEND

In a dispute concerning an insurer's duty to defend against a claim asserted against its insured in a civil suit, Colorado applies the "complaint rule."  This rule provides that the allegations of the relevant complaint against the insured, together with the language of the relevant insurance policy, provide the bases for evaluating whether an insurer has a duty to defend.  ***Lopez v. American Family Mut. Ins. Co.***, 148 P.2d 438, 439 (Colo. App. 2006); ***Cotter v. American Empire Sur. Lines, Ins. Co.***, 90 P.3d 814 (Colo. 2004).

> We have long held that to determine whether a duty to defend exists, courts must look no further than the four corners of the underlying complaint (the "four corners" or "complaint" rule). ***See Hecla Mining Co.***

> ***v. N.H. Ins. Co.,*** 811 P.2d 1083, 1089 (Colo.1991). An insurer is not
> excused from this duty "unless there is no factual or legal basis on which
> the insurer might eventually be held liable to indemnify the insured." ***Id***. at
> 1090. Hence, if the alleged facts even potentially trigger coverage under
> the policy, the insurer is bound to provide a defense. ***Constitution Assoc.
> [v. N.H. Ins. Co.***, 930 P.2d [556, 563 (Colo 1986)]; ***Hecla***, 811 P.2d at
> 1089.

***Cyprus Amax Minerals Co. v. Lexington Ins. Co.***, 74 P.3d 294, 299 (Colo. 2003).

> An insurer seeking to avoid its duty to defend an insured bears a heavy
> burden.  An insurer's duty to defend arises when the underlying complaint
> against the [insured] alleges any facts that might fall within the coverage of
> the policy.  The actual liability of the insured to the claimant is not the
> criterion which places upon the insurance company the obligation to
> defend. Rather, the obligation to defend arises from allegations in the
> complaint, which if sustained, would impose a liability covered by the
> policy.  [W]here the insurer's duty to defend is not apparent from the
> pleadings in the case against the insured, but the allegations do state a
> claim which is potentially or arguably within the policy coverage, or there is
> some doubt as to whether a theory of recovery within the policy coverage
> has been pleaded, the insurer must accept the defense of the claim.
>
> *    *    *    *
>
> The insurer has a duty to defend unless the insurer can establish that the
> allegations in the complaint are solely and entirely within the exclusions in
> the insurance policy.  An insurer is not excused from its duty to defend
> unless there is no factual or legal basis on which the insurer might
> eventually be held liable to indemnify the insured.

***Hecla Mining Co. v. New Hampshire Ins. Co.***, 811 P.2d 1083, 1089 - 1090 (Colo.

1991) (internal quotations, citations, and footnote omitted).

The defendants argue that they were not obligated to provide a defense for the

Davis Firm in the Bates litigation because the allegations in the Bates Complaint show

that, at the inception of the 2008 - 2009 Policy (April 1, 2008), the Davis Firm had a

reasonable basis to believe that it had breached two professional duties to Ms. Bates

and that the breaches might result in a claim against the Davis Firm.  The defendants

rely on the provision of the 2008 - 2009 Policy, which provides coverage for a claim only

if

at the inception of this policy the Insured had no reasonable basis to believe that any Insured had breached a professional duty and no reasonable basis to believe an act, error, omission or Personal Injury might be expected to result in such Claim or Suit.

*2008 - 2009 Policy*, p. 3 of 12.  "Such prior-knowledge conditions are common in claims-made policies because they ensure that only risks of unknown loss are potentially [insured], and prevent an insured from obtaining coverage for the risk of a known loss, which would be unfair to the insurer."  ***Cohen-Esrey Real Estate Services, Inc. v. Twin City Fire Insurance Co.***, 636 F.3d 1300, 1303 (10th Cir. 2011) (internal quotation and citation omitted).

The parties agree that a subjective-objective test is applicable to a determination of whether the Davis Firm had a reasonable basis to believe that it had breached a professional duty and a reasonable basis to believe that the breach might be expected to result in a claim or suit.  First, the court must determine what facts were known subjectively by the insured.  In this case, the key facts concern knowledge of a breach of a professional duty.  Second, the court must determine objectively whether a reasonable person with knowledge of those facts would conclude that the Davis Firm had breached a professional duty and that the breach might be expected to result in a claim or suit.  This subjective-objective approach has been used by courts interpreting policy language similar to that at issue in this case.  ***See, e.g., Selko v. Home Insurance Co.***, 139 F.3d 146, 150 - 152 (3rd Cir. 1998); ***Westport Ins. Corp. v. Lilley***, 292 F.Supp.2d 165, 171 (D. Me. 2003).[3]

Applying Colorado law, my analysis of the duty to defend question must be

---

[3] In an unpublished opinion, the United States Court of Appeals for the Tenth Circuit applied a similar standard when interpreting the effect of exclusionary language in an insurance policy.  ***Rivelli v. Twin City Fire Ins. Co.***, 359 Fed. Appx. 1, 5 - 6 (10th Cir. 2009).

limited to the terms of the 2008 - 2009 Policy and the allegations in the Bates

Complaint.  If the allegations in the Bates Complaint even potentially trigger coverage

under the policy, then the defendants were bound to provide a defense to the Davis

Firm.  On the other hand, if the allegations in the Bates Complaint are solely and

entirely within the exclusion on which the defendants rely, then the defendants had no

duty to defend.  More specifically, if the allegations in the Bates Complaint concern only

facts that show that prior to April 1, 2008, the Davis Firm had a reasonable basis to

believe it had breached a professional duty to Ms. Bates and that the breach might

result in a claim or suit, then the allegations in the Bates Complaint are solely and

entirely within the exclusion on which the defendants rely.

In the Bates Complaint, Ms. Bates alleged that the Davis Firm breached two

professional duties owed to Ms. Bates.  First, Ms. Bates alleges that the Davis Firm was

negligent because it failed to use appropriate skill and care in preparing the Bates Trust.

*Bates Complaint*, ¶¶ 20, 21, 24, 28.  Second, Ms. Bates alleges that the Davis Firm was

negligent when it failed to file a timely complaint seeking judicial review of the Final

Agency Decision.  *Bates Complaint*, ¶ 16.  I consider each of these alleged breaches in

turn.

Addressing the first alleged breach of duty, the failure to draft the trust properly,

Ms. Bates detailed in her complaint the administrative decisions made concerning the

trust, including the date of the Final Agency Decision, September 4, 2007.  *Bates

Complaint*, ¶¶ 12 - 14.  A copy of the Final Agency Decision was attached to the Bates

Complaint as Exhibit 3.  *Bates Complaint*, ¶ 14.  The Final Agency Decision held, in

effect, that the Bates Trust had not been drafted in a way that accomplished Ms. Bates'

primary goal, which was to achieve eligibility for Medicaid.  Drafting the trust to

accomplish its intended purpose was a duty entrusted expressly to the Davis Firm by Ms. Bates.  Based on the facts alleged in the Bates Complaint, the Davis Firm knew on September 4, 2007, that the state agency with authority to make the determination had concluded that the Davis Firm had drafted the Bates Trust in a fashion that failed to accomplish the primary purpose of its client, Ms. Bates.  Knowledge of the Final Agency Decision is a reasonable basis for the Davis Firm to believe that it had breached a professional duty to Ms. Bates in drafting the Bates Trust.

Knowing that it had breached a professional duty to Ms. Bates, the Davis Firm also had a reasonable basis to believe that its breach of duty might be expected to result in a claim or suit against the Davis Firm.  A legal malpractice claim founded in negligence arises when a lawyer breaches a duty of care imposed by the attorney-client relationship.  *General Steel Domestic Sales, LLC v. Hogan & Hartson, LLP*, 230 P.3d 1275, 1284 (Colo. App. 2010).  "A breach of a professional duty and a basis for a claim are . . . 'two peas in a pod.' If the former occurs, experience teaches that the latter can be expected to follow."  *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*, 264 F.3d 302, 307 (3rd Cir. 2001).

The Davis Firm argues that, even if it knew of this breach of duty in September of 2007, it did not know that the breach might be expected to result in a claim.  The Davis Firm contends that Ms. Bates could have avoided any harm caused by the failure of the trust by "dumping the assets of the Bates Trust," as the firm advised Ms. Bates to do. *Response* [#28], p. 14.  Absent a harm caused by the breach of duty, the Davis Firm argues, Ms. Bates could not assert a claim against the Davis Firm.  Assuming it is true that Ms. Bates could have dumped the assets of the trust and achieved her goal of becoming eligible for Medicaid, a dumping of the trust assets does not avoid all

foreseeable harms caused by the failure of the trust.  For example, Ms. Bates could have sought to recover the attorney fees she paid to the Davis Firm to prepare the trust based on her contention that the trust was not drafted properly.

The Davis Firm argues also that it was not aware that its breach of duty might be expected to result in a claim against the firm until Ms. Bates indicated that she was dissatisfied with the firm's representation and intended to assert a claim against the firm.  This did not happen, the Davis Firm says, until May, 2009, when Ms. Bates made her first claim for damages against the Davis Firm.  *Motion for partial summary judgment* [#39], p. 15.  however, under the terms of the policy, an actual claim for damages by a client was not required for the firm to have the requisite knowledge of a potential claim.  Rather, the policy provides that a claim is not covered if, on the inception date of the policy, the Davis Firm knew of a breach of duty and had a reasonable basis to believe that the breach of duty "might be expected to result in" a claim or suit.  *2008 - 2009 Policy*, p. 3 of 12.  The language "might be expected to result" does not require that a claim actually be asserted against the firm before the firm has the knowledge described in the policy.

The allegations in the Bates Complaint indicate that no later than September 4, 2007, the Davis Firm had knowledge that created a reasonable basis to believe that it had breached a professional duty to Ms. Bates in drafting the Bates Trust and that the breach might be expected to result in a claim against the Davis Firm.  The 2008 - 2009 Policy excludes coverage for breaches of duty and possible claims known to the insured prior to the inception date of the policy on April 1, 2008.  Considering the terms of the 2008 - 2009 Policy and the Bates Complaint, I conclude as a matter of law that the claim concerning the drafting of the Bates Trust did not trigger a duty to defend under

the 2008 - 2009 Policy.

Addressing the second breach of professional duty, the failure to file timely a complaint for judicial review, Ms. Bates alleged in her complaint:

> A complaint seeking judicial review of the Final Agency Action was not filed in a timely manner by Davis and/or Davis & Associates, P.C. See Exhibit "4", attached hereto and incorporated herein by reference.

*Bates Complaint*, ¶ 16.[4]  The Final Agency Decision, Exhibit 3 to the Bates Complaint, includes a specific description of the deadline for filing an action for judicial review of the Final Agency Decision.

> This Final Agency Decision shall be effective and binding upon all parties on the third day after the date set forth in the certificate of mailing [September 4, 2007], even if the third day falls on a Saturday, Sunday, or a legal holiday.  Section 8.057.11.B.  The appellant may commence an action for judicial review of the Final Agency Decision, pursuant to the provisions of §24-4-106(4), C.R.S.  Any judicial action must be filed with the appropriate State District Court within thirty (30) calendar days after this Final Agency Decision becomes effective.

*Final Agency Decision*, p. 8.

Given the facts alleged in the Bates Complaint, including the relevant provisions of the Final Agency Decision, I conclude that the allegations in the Bates Complaint concerning the untimely filing of the action for judicial review would not create a liability covered by the policy.  Rather, the allegations establish that such a claim falls outside the coverage of the 2008 - 2009 Policy.  The Final Agency Decision, which is part of the Bates Complaint, indicates clearly that an action for judicial review must be filed within 30 days of September 7, 2007.

The statute cited in the Final Agency Decision, §24-4-106, C.R.S. (2007),

---

[4]  Paragraph 16 of the Bates Complaint refers to "Exhibit '4'," but does not specify what is contained in Exhibit 4.  Nothing in the record of the present case indicates what was contained in Exhibit 4.  Thus, I do not consider Exhibit 4 in my analysis.

prescribes the thirty day deadline.  Subsection (4) of the statute provides that "any

person adversely affected or aggrieved by any agency action may commence an action

for judicial review in the district court within thirty days after such agency action

becomes effective . . . . "  Section 24-4-106(4), C.R.S. (2007). Subsection (2) of the

statute provides:

> (2) Final agency action under this or any other law shall be subject to
> judicial review as provided in this section, whether or not an application for
> reconsideration has been filed, unless the filing of an application for
> reconsideration is required by the statutory provisions governing the
> specific agency. In the event specific provisions for rehearing as a basis
> for judicial review as applied to any particular agency are in effect on or
> after July 1, 1969, then such  provisions shall govern the rehearing and
> appeal procedure, the provisions of this article to the contrary
> notwithstanding.

Section 24-4-106(2), C.R.S. (2007).  Under subsection (2), if the "statutory provisions

governing a specific agency" require an application for reconsideration, then the timing

and procedure for seeking judicial review may differ from that stated in § 24-4-106 (2)

and (4).  However, nothing in the Bates Complaint or in the statute indicates that an

application for reconsideration was required in response to the Final Agency Decision,

or that other provisions of law suspended in any way the expiration of the thirty day time

limit.

The facts alleged in the Bates Complaint indicate that on September 7, 2007, the

Davis Firm learned of the thirty day time limit for filing an action for judicial review.  The

Bates Complaint indicates that this deadline expired on October 7, 2007, without the

filing of an action for judicial review by the Davis Firm.  The Bates Complaint does not

indicate specifically when the Davis Firm learned that this deadline had expired without

the filing of an action for judicial review. However, given the specific factual allegations

in the Bates Complaint, including the Final Agency Decision and the content of §24-4-

106(2), (4), C.R.S., which is referenced in the Final Agency Decision , it was reasonable for the defendants to infer that the Davis Firm knew that the deadline had expired sometime before the inception date of the 2008 - 2009 Policy, which was April 1, 2008. By the time the 2008 - 2009 Policy became effective on April 1, 2008, more than 200 days had passed since the Davis Firm had learned of the thirty day deadline to file an action for judicial review.  The Davis Firm's knowledge of this breach of duty, and the resulting reasonable belief that a claim might be expected to result from the breach, prior to April 1, 2008, demonstrates that the 2008 - 2009 Policy does not provide coverage for this claim.

The allegations in the Bates Complaint concerning the failure of the Davis Firm to draft the trust properly and the failure of the Davis Firm to file a timely action for judicial review are solely and entirely within the exclusions in the 2008 - 2009 Policy.  Looking solely to the terms of that policy and the allegations in the Bates Complaint, there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured on the claims asserted in the Bates Complaint. The defendants had no duty to defend the Davis Firm against the claims asserted in the Bates Complaint.

### D.  DUTY TO INDEMNIFY

The duty of an  insurance company to indemnify concerns the duty of the company to satisfy a judgment against an insured, if the judgment is based on a claim covered by the insurance policy.  In its complaint, the Davis Firm alleges that the defendants also have a duty to indemnify the firm for the claims of Ms. Bates against the firm.

"Where there is no duty to defend, it follows that there can be no duty to indemnify."  ***Constitution Assoc. v. New Hampshire Ins. Co.***, 930 P.2d 556, 563

(Colo. 1996).  Here, the defendants had no duty to defend, and, thus, had no duty *ipso facto* to indemnify.

Even if the defendants did have a duty to defend in this case, I conclude that the undisputed facts in the record demonstrate that the defendants have no duty to indemnify the Davis Firm for any liability established on the claims asserted in the Bates Complaint.  Notably, in determining a duty to indemnify, as opposed to a duty to defend, the court may look beyond the terms of the relevant insurance policy and the civil complaint brought against the insured.  ***Cyprus Amax Minerals Co. v. Lexington Ins. Co.***, 74 P.3d 294, 301 - 302 (Colo. 2003) ("extrinsic evidence may assist the trial court in determining whether and to what extent actual liability, as represented by a verdict or settlement, is covered by an existing policy.").

In this case, the undisputed facts in the record demonstrate that prior to April 1, 2008, the Davis Firm had the knowledge and the reasonable basis to believe that it had breached the two professional duties that were the bases of the claims of Ms. Bates against the firm and that a claim or suit may be expected to result.  With regard to the drafting of the trust, it is undisputed that the Davis Firm learned of the Final Agency Decision on September 4, 2007.  As discussed previously, knowledge of that decision gave the Davis Firm a reasonable basis to believe that it had breached a professional duty to Ms. Bates by failing to draft the Bates Trust in a way that accomplished her primary goal and that as a result a claim or suit might be expected to result.

With regard to the firm's failure to file an action for judicial review in a timely fashion, it is undisputed that on January 17, 2008, the state district judge assigned to the action for judicial review entered an order dismissing the claim for judicial review of the Final Agency Decision because the action for judicial review was not commenced

"within the applicable time limits . . . ."  *Motion for judgment on the pleadings* [#27],

Exhibit C (***Bates v. Henneberry***, Case No. 07CV11002, District Court, City and County

of Denver, Colorado (Order, filed January 17, 2008)).  Although the Davis Firm did not

represent Ms. Bates in the action for judicial review, it is undisputed that the Davis Firm

assured Ms. Bates that the firm would file a timely complaint seeking judicial review.  It

is undisputed also that the Davis Firm referred Ms. Bates to another lawyer for

assistance in filing the action for judicial review and that this referral occurred after the

thirty day deadline had expired.  *Response* [#28], Exhibit 1, ¶¶ 23 - 24.  It is undisputed

also that the Davis Firm was aware of the progress of that case.  The January 17, 2008,

order of the Denver District Court gave the Davis Firm the knowledge and the

reasonable basis to believe that it had breached a professional duty to Ms. Bates by

failing to file an action for judicial review in a timely fashion and that, therefore, a claim

or suit might be expected to result.

On June 2, 2008, the Denver District Court issued an order dismissing the claim

under 42 U.S.C. § 1983, which claim was asserted in the same case as the action for

judicial review.  The Davis Firm argues that it was not until June 2, 2008, that it could

possibly have had any basis to believe that a claim for legal malpractice could result

from its failure to file a timely complaint for judicial review.  I disagree.  The January 17,

2008, order of the Denver District Court clearly and explicitly dismisses the claim for

judicial review because the complaint was not timely filed.  Knowledge of that order

provides a reasonable basis to believe that the Davis Firm had breached a professional

duty and that a claim might result.

### E.  RESOLUTION OF THE PLAINTIFFS' CLAIMS

Given my conclusion that the defendants had neither a duty to defend nor a duty

to indemnify the Davis Firm against the claims asserted in the Bates Complaint, the defendants are entitled to summary judgment on each of the plaintiffs' claims in this case. The plaintiffs' breach of contract and bad faith breach of insurance contract claims both are based on the allegation that the defendants breached duties held by the defendants under the terms of the insurance policy. Viewing the undisputed facts in the record in the light most favorable to the plaintiffs, I conclude as a matter of law that the 2008 - 2009 Policy is the only policy that potentially covers the claims asserted in the Bates Complaint and that under the terms of that policy, the defendants had no duty to defend or indemnify the Davis Firm against those claims. Absent a breach by the defendants of a duty created under the policy, there is no basis for the plaintiffs' breach of contract claim or bad faith breach of insurance contract claim. The defendants are entitled to summary judgment on both of these claims.

The plaintiffs' claim under §§10-3-1115 and 10-3-1116, C.R.S. is based on allegations that the defendants "unreasonably delayed or denied insurance policy benefits" to the plaintiffs and that the defendants refused "to make full and adequate payment of insurance benefits to Plaintiffs." *Complaint* [#1-3], ¶¶ 38 - 39. Viewing the undisputed facts in the record in the light most favorable to the plaintiffs, I conclude that the defendants had no duty to defend or indemnify the plaintiffs against the claims asserted in the Bates Complaint. Absent such duties, there is no basis to contend that the defendants delayed or denied benefits or failed to make full and adequate payment of benefits. Thus, the defendants are entitled to summary judgment on the plaintiffs claim under §§10-3-1115 and 10-3-1116, C.R.S.

## V. CONCLUSION AND ORDERS

Viewing the undisputed facts in the record in the light most favorable to the

plaintiffs, I conclude that the defendants are entitled to summary judgment on each of the plaintiffs' claims, including the plaintiffs' breach of contract claim, bad faith breach of insurance contract claim, and claim under §§10-3-1115 and 10-3-1116, C.R.S.

**THEREFORE, IT IS ORDERED** as follows:

1. That under FED. R. CIV. P. 12(d), the **Westchester Fire Insurance Company's and the Plus Companies, Inc.'s Motion for Judgment on the Pleadings** [#27] filed April 12, 2011, is **CONVERTED** to a motion for summary judgment;

2. That  the **Westchester Fire Insurance Company's and the Plus Companies, Inc.'s Motion for Judgment on the Pleadings** [#27] filed April 12, 2011, viewed as a motion for summary judgment, is **GRANTED**;

3. That the **Plaintiff's Motion for Partial Summary Judgment and Memorandum Brief in Support** [#39] filed August 23, 2011, is **DENIED**;

4. That the plaintiffs' **Complaint and Jury Demand** [#1-3] is **DISMISSED** with prejudice;

5.  That judgment **SHALL ENTER** in favor of the defendants, Westchester Fire Insurance Company and the Plus Companies, Inc., against the plaintiffs, Davis & Associates P.C. n/k/a Davis Shilken, P.C., and Keith L. Davis, as to all claims and causes of action asserted herein;

6. That the Trial Preparation Conference, currently scheduled for January 27, 2012, as well as the trial, currently scheduled to commence on Monday, February 6, 2012, both are **VACATED**;

7. That the **Defendants' Motion To Continue Trial Date** [#56] is **DENIED** as moot; and

8. That the defendants are **AWARDED** their costs, to be taxed by the Clerk of

the Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and

D.C.COLO.LCivR 54.1.

Dated January 24, 2012, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge